UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**WYCLIFFE JUDSON HERRINGTON III,**
**MARK ROSS HERRINGTON, and**
**HERRINGTON BROTHERS FARMS, LLC,**
      Plaintiffs,

    v.                                       Case No. 19-C-0767

**CNH INDUSTRIAL AMERICA, LLC,**
      Defendant.

---

## DECISION AND ORDER

Herrington Brothers Farms, LLC, and its two members, Wycliffe Judson Herrington III and Mark Ross Herrington, allege that they purchased three Module Express cotton pickers manufactured by CNH Industrial America, LLC, that did not perform as promised and caused them economic losses. They bring claims against CNH for breach of the implied warranty of merchantability, breach of the implied duty of good faith and fair dealing, violation of Wisconsin's Deceptive Trade Practices Act, common-law fraud, and negligent misrepresentation. CNH has filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

Today, I issued an opinion in the related case of *T&M Farms, et al. v. CNH Industrial America, LLC*, Case No. 19-C-85, in which I granted defendant CNH Industrial America LLC's motion to dismiss a similar complaint in part and denied the motion in part. Many aspects of that decision are relevant here. However, the allegations in the present case are substantially different than the allegations in *T&M Farms*, and the differences matter to the plaintiffs' claim under the Deceptive Trade Practices Act.

Below, I will briefly discuss the matters that I addressed in more detail in *T&M Farms* and provide a fuller discussion of the plaintiffs' claim under the Deceptive Trade Practices Act. I also confirm that I have subject-matter jurisdiction.

## I. BACKGROUND

This case involves CNH's "Module Express" line of cotton pickers. These pickers purport to revolutionize cotton harvesting by combining three functions in a single machine. Under the old way of harvesting, a farmer would use three devices: a picker, a boll buggy, and a module builder. CNH advertises the Module Express as a single machine that can replace the other three. It is supposed to pick cotton from the field, form it into large rectangular "modules," and then deposit the modules in the field. Later, a farmer will load the module into a truck and bring it to a gin for processing. CNH represents that by using the Module Express, a farmer may eliminate the boll buggy and separate module builder, along with the labor and fuel costs associated with operating these machines.

The complaint in the present case alleges that, in approximately 2009, a person named Bill Greer—whom the plaintiffs identify as a "CNH sales representative"—encouraged the plaintiffs to consider purchasing a Module Express for its upcoming harvest. Greer provided the plaintiffs with promotional material created by CNH, including a 9-minute video that made representations about the Module Express's capabilities.[1] The video makes the following representation:

---

[1] As of this writing, the video is available on the Internet at https://www.youtube.com/watch?v=vAWxKA8Ahho.

2

> The [Module Express] builds industry compatible modules while it moves down the row. That eliminates both the boll buggy and the module builder. It also eliminates the tractors associated with them, the fuel to run them, and the labor costs that go with all of them. With the Module Express, cotton picking is truly a one man, one machine operation, and it can pick more cotton in a day than a 6-row basket picker.

Compl. ¶ 18.

Based on the statements in the video, along with others made by Greer and in CNH's marketing materials, the plaintiffs purchased a "previously sold" (*i.e.*, used) Module Express 625 from a CNH dealer in Georgia. Compl. ¶ 21. The plaintiffs allege that the picker did not perform in accordance with the representations made in CNH's promotional materials. Among other problems, the picker frequently broke down, and it failed to "properly pack cotton and build serviceable cotton modules." Compl. ¶ 23. The plaintiffs allege that "[e]ven when [the picker] was not broken down for repairs, the 625 would not perform its essential purpose: it would not build serviceable cotton modules onboard the machine while the machine was moving down the cotton row." *Id.* ¶ 24. The plaintiffs allege that, because of this, they had to hire laborers "to gather loose cotton around the poorly built modules created by the 625." *Id.* ¶ 25.

The plaintiffs tried to trade in their Module Express 625 at CNH and John Deere dealers. However, no dealer would accept the machine. Because of the 625's poor performance, the plaintiffs knew that they could not complete their harvest with just one 625. Thus, they purchased a second Module Express 625. But this second 625 "suffered many of the same malfunctions, breakdowns, module-building failures, and reliability problems as [the] first 625." Compl. ¶ 32.

The plaintiffs used their two Module Express pickers for "years" but were never satisfied with their performance. Compl. ¶ 33. They made numerous unsuccessful attempts to trade them in for John Deere pickers. Eventually, the plaintiffs were persuaded to trade in their two 625s for a newer model, the CNH Module Express 635. A CNH dealer accepted their two 625s in exchange for one new 635. *Id.* The plaintiffs allege that, in purchasing the new 635, they "rel[ied] upon past representations that the Module Express issues it had experienced previously were fixable and limited in scope." *Id.* The plaintiffs allege that the new 635 performed even worse than their old 625s.

The plaintiffs tried to trade in their 635 to CNH and John Deere dealers but were unsuccessful. Because the plaintiffs could not reliably harvest cotton with the 635, they finally abandoned it and purchased a John Deere picker with an onboard module builder. Compl. ¶ 39. In 2017, a CNH dealer finally accepted the plaintiffs' 635 as part of a trade in for a tractor.

## II. DISCUSSION

### A.   Subject-Matter Jurisdiction

Plaintiff Herrington Brothers Farms, LLC, is a limited liability company. The members of Herrington Brothers Farms are plaintiffs Wycliffe Judson Herrington III and Mark Ross Herrington, who are citizens of Georgia. CNH is a limited liability company whose sole member is a corporation organized under the laws of Delaware that has its principal place of business in Wisconsin. The plaintiffs allege a claim against CNH in which the amount in controversy exceeds $75,000, exclusive of interest and costs. Therefore, diversity jurisdiction exists under 28 U.S.C. § 1332(a).

**B.     Choice of Law**

In *T&M Farms*, CNH conceded for purposes of the motion to dismiss that Wisconsin law applies. In the present case, CNH contends that Georgia law applies. But at this point, I do not see a material conflict between Wisconsin and Georgia law. CNH contends that Georgia law has a shorter statute of limitations, but, as discussed below, I cannot dismiss the complaint based on the statute of limitations. Thus, for now, I will assume that Wisconsin law applies. The parties are free to raise any choice of law issue they wish during future proceedings.

**C.     Statute of Limitations Defenses & Defenses Based on Manufacturer's Limited Warranty**

CNH argues that the plaintiffs' claims are barred by the statute of limitations and by the written limited warranty CNH claims it made at the time each picker was sold. However, I cannot dismiss the complaint on either of these grounds. The statute of limitations is an affirmative defense that the plaintiff has no obligation to plead around. *See, e.g., Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Only when the plaintiff admits all the ingredients of an impenetrable defense may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6). *Id.* Here, the plaintiffs have not admitted all the ingredients of a statute-of-limitations defense. CNH points to documents outside the pleadings purporting to show that the plaintiffs purchased their pickers in 2012 or earlier. However, this brings me to my next point, which is that I may not consider documents outside the pleadings when deciding a motion under Rule 12(b)(6).

CNH refers to documents outside the pleadings to establish the dates on which the plaintiffs purchased their pickers and to show that, at the time of sale, CNH made an

5

express warranty to the plaintiffs that disclaimed all implied warranties and limited them to a repair remedy. Under Rule 12(d), a court may not consider matters outside the pleadings on a motion under Rule 12(b)(6) without converting the motion to one for summary judgment. CNH does not ask me to convert the motion to one for summary judgment, and in any event, I would not do so without affording the plaintiffs at least limited discovery on the facts relating to the documents at issue. CNH contends that I may consider the documents without converting the motion to one for summary judgment because they qualify for a limited exception to Rule 12(d) that applies when the documents are ones to which the complaint refers, are concededly authentic, and are central to the plaintiffs' claim. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). However, this exception cannot apply here because the documents are neither referred to in the complaint nor concededly authentic. Therefore, I will not consider the documents attached to the motion to dismiss.

**D.     Breach of Implied Warranty of Merchantability—New Picker**

CNH moves to dismiss the plaintiff's claim for breach of the implied warranty of merchantability relating to the new Module Express 635 based on the statute of limitations and the disclaimer CNH purportedly made in its limited manufacturer's warranty. However, as discussed, these defenses rely on documents outside the pleadings and therefore do not constitute grounds for dismissing the complaint under Rule 12(b)(6).

6

E. **Breach of Implied Warranty—Used Pickers**

For the reasons stated in my *T&M Farms* decision concerning used pickers, I conclude that the complaint in the present case fails to state a claim for breach of the implied warranty of merchantability relating to the plaintiffs' used pickers. The complaint here does not plead facts from which privity of contract between the plaintiffs and CNH reasonably may be inferred. However, as I did in *T&M Farms*, I will grant the plaintiffs leave to replead. If they choose to replead, the plaintiffs must allege facts from which it reasonably may be inferred that CNH, rather than its dealer, was the seller of the used pickers at issue or otherwise entered into a contract with the plaintiffs for the sale of the used pickers.

F. **Breach of Implied Duty of Good Faith and Fair Dealing**

For the reasons explained in my *T&M Farms* decision regarding the implied duty of good faith and fair dealing, this claim is dismissed. However, the plaintiffs have leave to replead if they can allege facts showing that CNH purposefully caused the supply of replacement parts to dry up to discourage farmers from utilizing a repair warranty.

G. **Wisconsin Deceptive Trade Practices Act**

In *T&M Farms*, I dismissed the plaintiffs' claims for violation of Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18(1), because they did not identify any non-puffing statements made by CNH that caused them to purchase their Module Express pickers. Instead, the plaintiffs identified a series of CNH's marketing statements—many of which were puffery—in paragraph 47 of their complaint but did not identify which, if any, of those statements caused them to purchase their machines. In the present case, the plaintiffs make the same allegations about CNH's marketing

7

scheme as did the plaintiffs in *T&M Farms* (they appear in paragraph 54 of this complaint). However, the plaintiffs here also identify the CNH promotional video discussed in the background section above and allege that they relied on the statements made in that video when they purchased their pickers. I must determine whether these additional allegations state a claim under § 100.18(1). A claim under § 100.18(1), has three elements: (1) the defendant made a representation to one or more members of the public with the intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation materially induced a pecuniary loss to the plaintiff. *Hinrichs v. DOW Chemical Company*, 937 N.W.2d 37, 56 (Wis. 2020).

CNH's video represents, among other things, that the Module Express "builds industry compatible modules while it moves down the row." Compl. ¶ 18. This is not marketing puffery; it is a representation of fact identifying the product's basic function. One can reasonably infer that CNH made this statement in its video intending to induce an obligation—the sale of Module Express pickers. The complaint alleges that this statement was false, in that the plaintiffs' Module Express "would not build serviceable cotton modules onboard the machine while the machine was moving down the cotton row." *Id.* at 24. The complaint also alleges that the plaintiffs relied on CNH's video when they purchased their first Module Express 625. *Id.* ¶¶ 17–21. Further, it is reasonable to infer that, when the plaintiffs later purchased two more pickers, they relied on CNH's representation that the machines would build industry compatible modules while they moved down the row. Thus, I conclude that the plaintiffs have stated a claim under the Deceptive Trade Practices Act.

8

H.  **Fraud and Negligent Misrepresentation**

For the reasons explained in my *T&M Farms* decision, these claims are dismissed as barred by the economic loss doctrine, and the plaintiffs are not granted leave to replead.

I.  **Unjust Enrichment**

For the reasons explained in my *T&M Farms* decision with respect to unjust enrichment, this claim is not dismissed.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant's motion to dismiss the complaint is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that the following claims are dismissed: (1) the claim for breach of the implied warranty of merchantability regarding the plaintiffs' used pickers; (2) the claims for breach of the implied duty of good faith and fair dealing; and (3) the claims for common-law fraud and negligent misrepresentation. In all other respects, the motion is denied. Further, the plaintiffs are granted leave to replead their claim for breach of the implied warranty of merchantability regarding the used pickers and their claim for breach of the implied duty of good faith and fair dealing involving the failure to supply replacement parts. The plaintiffs are not granted leave to replead their claims for common-law fraud and negligent misrepresentation.

Dated at Milwaukee, Wisconsin, this 5th day of March, 2020.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge